## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

JOSEPH SKIRCHAK AND BARRY **05  11362 MEL**
ALDRICH, ON BEHALF OF )
THEMSELVES AND ALL OTHERS )
SIMILARLY SITUATED, ) Civil Action No.:
)
) MAGISTRATE JUDGE _____
Plaintiffs, )
v. ) JURY DEMANDED
)
DYNAMICS RESEARCH CORPORATION, INC., ) RECEIPT # _____
A Massachusetts corporation, ) AMOUNT $_____
) SUMMONS ISSUED _____
Defendant ) LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK _____
### CLASS ACTION COMPLAINT        DATE _____

Now come plaintiffs, for themselves and all others similarly situated, and allege the following upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction over overtime claims pursuant to Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. §216(b), which provides, "[a]n action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer…in any federal or state court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." A Consent to Sue form for each plaintiff is attached hereto as *Exhibits A-B.*

2.    This Court also has general federal question jurisdiction pursuant to 28 U.S.C. §1331, the federal statute in question being the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.*

3.    This Court has supplemental, pendant, and/or ancillary jurisdiction pursuant to 27 U.S.C. §1367(a) over the Massachusetts state law claim for overtime because this claim is so related to claims in the action within such original jurisdiction that it forms part of the same case or controversy; i.e., this claim involves the same parties, arises out of the same pay practices, and involves the same issues of proof of exempt or non-exempt status.

4.   Venue is proper in the United States District Court of Massachusetts because the Defendant is a Massachusetts corporation conducting business in Massachusetts and the acts complained of herein happened in Massachusetts.

## BACKGROUND AND PARTIES

5.   Plaintiffs Joseph Skirchak and Barry L. Aldrich, on behalf of themselves and all others similarly situated (collectively "Plaintiffs"), by their undersigned attorney, bring this action against Defendant Dynamics Research Corporation, Inc., a Massachusetts corporation ("DRC" or Defendant.

6.   Up until approximately October 1, 2004, Defendant willfully failed to pay Plaintiffs and all other persons employed in positions categorized as "exempt" time and one-half their regular rate of pay for all hours worked in excess of forty (40) per week.

7.   This Complaint is brought by Plaintiffs on their own behalf and on behalf of all persons who are or have been employed by Defendants in exempt positions, who have not been paid overtime owed to them for the applicable class period, defined herein.

8.   Plaintiffs seek certification as a class (i) of employees designated by DRC a exempt employees employed within Massachusetts within the last two (2) years immediately preceding the filing of the Complaint, pursuant to the Federal and/or Massachusetts Rule of Civil Procedure 23; and (ii) all employees designated by DRC as exempt employees employed in any state other than Massachusetts within the last three (3) years immediately preceding the filing of the Complaint, pursuant to 29 U.S.C. §216(b).

9.   Plaintiff Joseph Skirchak is an individual who resides at 1026 Route 12A, Plainfield, New Hampshire. Skirchak worked as Director of Compensation and Retirement Programs from April 23, 2001 until October 1, 2004.

10.   Plaintiff Barry L. Aldrich is an individual who resides at 4081 Judith's Fancy, Christiansted , VI. Aldrich worked as Vice President of Contracts from on or about December 10, 2000 until November 12, 2004.

11.   Defendant Dynamics Research Corporation, Inc. is a Massachusetts corporation with its headquarters in Andover, Massachusetts.

12.   According to their own website, the Defendant is a publicly held company providing computer- based systems development, engineering management, and logistics support services to Federal, State, and local government.

## FACTUAL ALLEGATIONS

13.   Defendant pays employees that it has designated as exempt employees on

2

salary basis. The amount of their pay does not depend upon the number of hours they work in a given work week. Employees designated as exempt employees regularly work in excess of forty (40) hours per week.

14.    Defendant classifies employees as exempt assuming compliance with the Job Duties, Salary level, and Salary Basis tests mandated under the Massachusetts Wage Act and the FLSA.

15.    Defendant knowingly and willfully violated the Salary Basis test by maintaining a corporate policy signed by the CEO requiring that all designated exempt employees work a minimum of 40 hours per week.

16.    Defendant as a matter of policy required payroll to automatically charge an exempt employee's Paid Time Away (PTA) bank of hours for either full or partial day deductions if the employee did not charge at least 40 hours of actual work or other approved time category on their weekly timecard.

17.    Defendant knew that in charging the exempt employee with either full or partial day deductions often resulted in an employee's PTA bank containing negative hours that needed to be erased through future accruals.

18.    Defendant required by policy, that exempt employees who terminated employment at DRC with negative PTA balances repay the company for the advanced hours knowing that these negative balances included partial day deductions.

19.    Defendant established a pay code for Exempt Unpaid (EU) that could be charged for full day absences. In so doing, the employee would be docked one day of pay.

20.    Defendant approved the use of the EU code for partial day deductions.

21.    Defendant continually received communications from Human Resource management and legal counsel indicating that its policy of partial day deductions from exempt employees violated the FLSA. Defendant chose to continue with its policy creating timekeeping/payroll issues resulting in harm to exempt employees.

22.    The Department of Labor conducted an investigation of Defendant's pay policy regarding partial day deductions of exempt employees and Defendant agreed to pay back the wages wrongfully deducted.

23.    Defendant violated the Salary basis test of the FLSA and in doing so misclassified employees as "exempt" from the overtime compensation requirement of Massachusetts Wage Act and the FLSA.

3

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

24.    Pursuant to the Federal and/or Massachusetts Rule of Civil Procedure 23, Plaintiffs bring Count I as a true class action (also commonly referred to as an "opt-out" class) for violation of the Massachusetts Wage Act, on behalf of themselves and on behalf of all persons similarly situated within the class of Exempt employees, employed by the Defendant within the Commonwealth of Massachusetts within two (2) years of the filing of this Complaint until entry of judgment after trial ("Massachusetts Class").

25.    Pursuant to Section 16(b) of the FLSA, Plaintiffs bring Count II as a collective action (also commonly referred to as an "opt-in" class), on behalf of themselves and on behalf of all persons who may choose to opt-in to this action who are similarly situated within the class of Exempt employees, employed by the Defendant in any of their divisions in any state except Massachusetts within three (3) years of the filing of this Complaint until entry of judgment after trial ("FLSA Class").

26.    Plaintiffs are informed and believe, and based thereon allege that there are approximately five hundred (500) people in the Massachusetts Class and in addition to these employees, approximately another eleven hundred (1100) people who were employed by the Defendant in other states who may also choose to opt-in to the FLSA Class. The actual number of members in each subclass is readily ascertainable by review of the Defendant's records through appropriate discovery.

27.    The persons in the Massachusetts Class and the persons in the FLSA Class are so numerous that joinder is impracticable and would involve hundreds of actions. Disposition of these claims in a class or collective action rather than in individual actions will benefit the parties and the Court.

28.    There is a well-defined community of interest in the questions of law and fact affecting each class as a whole.

29.    Proof of a common or single set of facts will establish the right of each member of both classes to recover. These common questions of law and fact predominate over questions that affect only individual class members. Plaintiff's claims are typical of those of the class.

30.    A class or collective action is superior to other available methods for the fair and efficient adjudication of the controversy. Due to the typicality of the class members' claims, the interests of judicial economy will be best served by adjudication of this lawsuit as a class action. This type of case is uniquely well-suited for class or collective treatment since 1) the employer's practices were uniform; 2) the burden is on the employer to prove any exemption, and 3) the burden is on the employer to disprove the hours of overtime claimed by the employees.

4

31.    Plaintiffs will fairly and adequately represent the interests of the class, and have no interests that conflict with or are antagonistic to the interests of the class.

32.    Plaintiffs and counsel are aware of their fiduciary responsibilities to the class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for the class.

33.    There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the class will tend to establish inconsistent standards of conduct for the Defendant and result in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties.

## CAUSES OF ACTION
## COUNT I: FAILURE TO PAY STATUTORILY MANDATED WAGES
### (Violation of Massachusetts General Laws Chapter 151§§1A and 1B)

34.    Plaintiffs repeat the allegations set forth in paragraphs 1 through 33 as if each were separately and completely set forth herein.

35.    Mass. Gen. Laws Ch. 151 §1A provides that non-exempt employees must receive "compensation for his employment in excess of forty hours at a rate no less than one and one half times the regular rate at which he is employed."

36.    Mass. Gen. Laws Ch. 151 §1B provides that employers who willfully or with reckless indifference to the rights of their employees fail to pay the overtime wages required by Ch. 151 §1A shall be liable in a civil action brought by an aggrieved employee for three times the unpaid overtime wages owed by the employer.

37.    By their conduct set forth herein, the Defendant violated Mass. Gen. Laws Ch. 151 §1A by failing to pay Plaintiffs and the Massachusetts Class time and one-half their regular hourly rate for hours worked in excess of forty (40) hours in a workweek.

38.    As a result of the unlawful acts of the Defendant, Plaintiffs and Massachusetts Class members have been damaged in that they have been deprived of overtime pay in amounts to be proven at trial.

39.    At all relevant times the Defendant had a policy allowing for partial day deductions from exempt employee's wages in violation of the Salary Basis test as described in the Massachusetts Wage Act. Such deductions from Plaintiffs and Massachusetts Class members were inconsistent with exempt status, and therefore such persons were and are not exempt from the overtime provisions of Mass. Gen. Laws Ch. 151 §1A.

WHEREFORE, Plaintiffs and Massachusetts Class members demand judgment against the Defendant for three times their unpaid overtime compensation, plus

5

reasonable attorneys' fees and costs of suit, and such other relief as the Court deems proper and just.

## COUNT II: FAILURE TO PAY STATUTORILY MANDATED WAGES
### (Violation of the Fair Labor Standards Act, 29 U.S.C. §§201-219)

40.     Plaintiffs repeat the allegations set forth in paragraphs 1 through 39 as if each were separately and completely set forth herein.

41.     By their conduct as set forth herein, the Defendant violated 29 U.S.C. §207(a) by failing to pay the FLSA Class time and one-half their regular hourly rates for hours worked in excess of forty (40) hours during a workweek.

42.     As a result of the unlawful acts of the Defendant, Plaintiffs and Plaintiff class members have been deprived of overtime pay in amounts to be proven at trial.

43.     At all relevant times the Defendant had a policy allowing for partial day deductions from exempt employees wages in violation of the Salary Basis test as described in the Fair Labor Standards Act. Such deductions from Plaintiffs and the FLSA Class members were inconsistent with exempt status, and therefore such persons were and are not exempt from the overtime provisions of the FLSA.

44.     Defendants' violations of 29 U.S.C. were repeated, willful and intentional.

WHEREFORE, Plaintiffs and FLSA class members demand judgment against the Defendant for the unpaid balance of overtime compensation, plus an equal amount as liquidated damages, along with reasonable attorneys' fees and costs of suit, and such other relief as the court deems proper and just.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and Plaintiff class members demand judgment against the Defendant as hereinafter set forth, including, *inter alia*:

(a)     Declare Count I of this action to be maintainable as a class action pursuant to Fed. and/or Mass. R. Civ. P. 23;

(b)     Declare Count II of this action to be maintainable as a collective action pursuant to 29 U.S.C. §216(b), and direct the Defendant to provide to Plaintiffs a list of all persons employed by it classified as exempt during the FLSA Class Period, including the last known address and telephone number of each person, so that Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate or not;

(c)     Determine the damages sustained by Plaintiffs and FLSA Class members as a result of the Defendant's violations of 29 U.S.C. §216(b), and award those damages against the Defendant and in favor of Plaintiffs and all members of the FLSA Class, plus

an additional equal amount as liquidated damages under 29 U.S.C. §216(b), and such pre-judgment interest as may be allowed by law.

(d)    Award Plaintiffs and FLSA Class members their costs and disbursements of this suit, including without limitation, reasonable attorney's, accountants' and experts' fees;

(e)    Grant Plaintiffs and FLSA Class members such other and further relief as the Court may deem just and proper;

(f)    Determine the damages sustained by Plaintiffs and Massachusetts Class members as a result of the Defendant's violations of Mass. Gen. Laws Ch. 151, and award those damages against the Defendant in favor of Plaintiffs and Massachusetts Class members, plus treble damages pursuant to Mass. Gen. Laws Ch. 151 §§1A and 1B, and such pre-judgment interest as may be allowed by law;

(g)    Award Plaintiffs and Massachusetts Class members their costs and disbursements of this suit, including without limitation, reasonable attorney's, accountants' and expert fees; and

(h)    Grant Plaintiffs and Massachusetts Class members such other and further relief as the Court may deem just and proper.

Submitted by the attorney for the Plaintiffs and the Class,

Elayne N. Alanis
Elayne N. Alanis

THE LAW OFFICE OF ELAYNE N. ALANIS
Elayne N.Alanis (BBO # 660365)
10 Tremont Street, 3rd Floor
Boston, MA 02108
(617) 263-1203 (phone)
(617) 742-1724 (Fax)
ealanis@verizon.net

Shannon Liss-Riordan (BBO # 640716)
Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, P.C.
18 Tremont Street, Suite 500
Boston, MA 02108
(617 367-7200

Dated: June 27, 2005

**EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**


JOSEPH SKIRCHAK AND BARRY ALDRICH )
ON BEHALF OF THEMSELVES AND ALL )
OTHERS SIMILARLY SITUATED, )
)
              Plaintiffs, )
) CIVIL ACTION NO.:
v. )
)
DYNAMICS RESEARCH CORPORATION INC. )

              Defendant.


Pursuant to 29 U.S.C. §216(b), I consent to act as a plaintiff in this case, both on my own behalf and on behalf of all persons similarly situated.

Dated: 6/13/05

                             /s/ Joseph Skirchak

**EXHIBIT B**

.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

JOSEPH SKIRCHAK AND BARRY L. ALDRICH )
ON BEHALF OF THEMSELVES AND ALL )
OTHERS SIMILARLY SITUATED, )
)
          Plaintiffs, )
)   CIVIL ACTION NO.:
v. )
)
DYNAMICS RESEARCH CORPORATION INC. )

          Defendant.

    Pursuant to 29 U.S.C. §216(b), I consent to act as a plaintiff in this case, both on

my own behalf and on behalf of all persons similarly situated.

Dated: 6/16/05

                               Barry L. Aldrich
                            Barry L. Aldrich



COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss

SUPERIOR COURT
CIVIL ACTION
NO. 05-01027-D

MARCUS GORDON, M.D.
    Plaintiff,

v.

9 BRANCH STREET, L.L.C.,
BROOKS C-1 CONTROL CORPORATION,
HAROLD J. BROOKS, and
JOSEPH FRIEDMAN,
    Defendants

**05 11372 MEL**

## DEFENDANT'S NOTICE TO STATE COURT FOR REMOVAL OF ACTION

Defendant, Harold J. Brooks, an individual and citizen of the State of Florida, hereby files this Notice to State Court of Removal of Action, and states as follows:

To:    Clerk of the Superior Court of the County of Norfolk, Commonwealth of Massachusetts;

You are hereby notified that defendant, Harold J. Brooks, an individual and citizen of the State of Florida on June 27, 2005, has filed with the Clerk of the United States District Court for the District of Massachusetts, his Notice of Removal of the above-styled action from this State Court to the Federal Court. A copy of the notice is attached as Exhibit A. By filing this notice, defendant, Harold J. Brooks, has effected a removal of this action to the United States District Court for the District of Massachusetts.

Pursuant to 28 U.S.C. § 1446 (d), this Court is prohibited from proceeding further in the above-styled action unless and until the action is remanded.

Dated: June 27, 2005

Respectfully Submitted,

HAROLD J. BROOKS
By his Attorneys,
Wiggin & Nourie, P.A.

By:     Paul R. Kfoury, Sr., Esq. (MA Bar #270560)
        Christopher J. Pyles, Esq. (MA Bar #631199)
        WIGGIN & NOURIE, P.A.
        670 N. Commercial Street, Suite 305
        PO Box 808
        Manchester, NH 03105
        603-669-2211

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of June, 2005 service of a copy of the
foregoing Notice to State Court for Removal of Action was made on the attorneys of
record for plaintiff by mailing a true copy thereof, contained in a sealed envelope, with
postage prepaid, addressed to said attorneys as shown below.

R. Alan Fryer, Esq.
Dorothy M. Bickford, Esq.
Badger Dolan Parker & Cohen
One State Street
Boston, Massachusetts 02109

Sarah R. Wunsch
ACLU of Massachusetts
99 Chauncy Street, Suite 310
Boston, MA 02111

Dated: June 27, 2005

By:     Paul R. Kfoury, Sr., Esq.

00639873.DOC

(TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED:-
TORT - MOTOR VEHICLE TORT - CONTRACT -
EQUITABLE RELIEF - OTHER.)

# COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT
CIVIL ACTION

NO. 05-01027-D

Marcus Gordon, M.D. ..............................................., *Plaintiff(s)*

**v.**

9 Branch Street, L.L.C., Brooks C-1 Control Corporation,
Harold J. Brooks, and Joseph Friedman
..........................................................., *Defendant(s)*

## SUMMONS

To the above-named Defendants

You are hereby summoned and required to serve upon R. Alan Fryer, Esq. of Badger, Dolan, Parker & Cohen

plaintiff's attorney, whose address is One State St., Boston, MA 02109, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Dedham either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

BARBARA J. ROUSE, Esquire
WITNESS, SUZANNE V. DELVECCHIO, *Esquire*, at Dedham the 16th

day of June, in the year of our Lord two thousand and five

*[signature]* Clerk.

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

F-33

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on  June 16 , 20 05 , I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5):

by first-class mail to Paul R. Kfoury, Sr., Esquire, Wiggin & Nourie, P.A.,

670 North Commercial Street, Suite 305, P.O. Box 808, Manchester, NH  03105-0808,

who agreed to accept service on behalf of all defendants.

Dated:   June 16          , 2005

R. Alan Fryer, Esquire
Attorney for Plaintiff

**N. B.   TO PROCESS SERVER:-**
**PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN**
**THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON**
**DEFENDANT.**

June 16      , 20 05

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT
CIVIL ACTION

NO.   05-01027-D

Marcus Gordon, M.D. .........................Plaintiff

v.

9 Branch Street, L.L.C., et al Defendant

SUMMONS
(Mass. R. Civ. P.4)

| CIVIL ACTION COVER SHEET | DOCKET NO.(S) 05 01027 | Trial Court of Massachusetts Superior Court Department County: Norfolk |
|---|---|---|

| PLAINTIFF(S) Dr. Marcus Gordon | DEFENDANT(S) Joseph Friedman, 9 Branch Street LLC, Brooks C-1 Control Corp., Harold J. Brooks |
|---|---|
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Sarah Wunsch, ACLU of MA 99 Chauncy St., Ste. 310 Boston, MA 02111 617-482-3170 Board of Bar Overseers number: 548767 | ATTORNEY (if known) Paul R. Kfoury, Sr. |

## Origin code and track designation

Place an x in one box only:

☒ 1. F01 Original Complaint
☐ 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
☐ 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

☐ 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
☐ 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
☐ 6. E10 Summary Process Appeal (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| E99 | 93A + injunction | ( X ) | ( ) Yes    ( X ) No |

**The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.**

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
   1. Total hospital expenses ......................................................... $..........
   2. Total Doctor expenses ........................................................... $..........
   3. Total chiropractic expenses .................................................... $..........
   4. Total physical therapy expenses ............................................... $..........
   5. Total other expenses (describe) ............................................... $..........
                                                                Subtotal $..........
B. Documented lost wages and compensation to date ................................. $..........
C. Documented property damages to date ........................................... $..........
D. Reasonably anticipated future medical and hospital expenses .................... $..........
E. Reasonably anticipated lost wages ............................................. $..........
F. Other documented items of damages (describe)
                                                                $..........

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

                                                                $..........
                                                        TOTAL $..........

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

                                                        TOTAL $. ..........

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

**"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."**

Signature of Attorney of Record ___Sarah R. Wunsch___        DATE: 6/10/2005

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

## Commonwealth of Massachusetts
### County of Norfolk
### The Superior Court

CIVIL DOCKET# **NOCV2005-01027-D**

RE:   **Gordon M D v 9 Branch Street LLC et al**

TO:Sarah R Wunsch, Esquire
American Civil Liberties Union
99 Chauncy Street
Suite 310
Boston, MA 02111

### TRACKING ORDER - F TRACK

You are hereby notified that this case is on the **fast (F) track** as per Superior Court
Standing Order 1-88. The order requires that the various stages of litigation described
below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 09/08/2005 |
| Response to the complaint filed (also see MRCP 12) | 11/07/2005 |
| All motions under MRCP 12, 19, and 20 filed | 11/07/2005 |
| All motions under MRCP 15 filed | 11/07/2005 |
| All discovery requests and depositions completed | 04/06/2006 |
| All motions under MRCP 56 served and heard | 05/06/2006 |
| Final pre-trial conference held and firm trial date set | 06/05/2006 |
| Case disposed | 08/04/2006 |

The final pre-trial deadline is **not the scheduled date of the conference**. You will be
notified of that date at a later time.
**Counsel for plaintiff must serve this tracking order on defendant before the deadline
for filing return of service.**
This case is assigned to session D sitting in **CtRm 8 at Norfolk Superior Court.**

Dated: 06/10/2005

Walter F. Timilty
Clerk of the Courts
BY:
Assistant Clerk

Location: CtRm 8
Telephone:

## COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT
CIVIL ACTION
NO.

**05  01027**

MARCUS GORDON, M.D.
          Plaintiff,

v.

9 BRANCH STREET, L.L.C.,
BROOKS C-1 CONTROL CORPORATION,
HAROLD J. BROOKS, and
JOSEPH FRIEDMAN,
          Defendants

## **COMPLAINT**

### **Introduction**

1.     This is a civil action to defend the right of the Plaintiff, Marcus Gordon, M.D., a gynecologist, to provide the full range of outpatient gynecological services to his patients. The Defendants own a Methuen office building in which Dr. Gordon leases space for his medical practice. The Defendants are threatening to terminate Dr. Gordon's office lease unless he stops providing abortion-related services to his patients. Dr. Gordon seeks immediate and permanent relief to prohibit the Defendants from interfering with his right to provide his female patients with medically appropriate reproductive health care services, and thereby preserve the constitutionally protected right of a woman in consultation with her physician to terminate a pregnancy.

2.      Defendants are claiming that Dr. Gordon is in violation of numerous provisions of his lease and that Defendants will terminate the lease unless he stops providing abortion-related services to his patients. All of the Defendants' allegations are false and are a pretext to mask the underlying issue, which is the Defendants' admitted desire to evict Dr. Gordon due to their opposition to pregnancy termination procedures.

3.      Moreover, the Defendants' actions constitute continuing violations of the Massachusetts Civil Rights Act, Mass. Gen. Laws, chapter 12, §§ 11H and11I, because they constitute the use of threats, intimidation and coercion to force Dr. Gordon to restrict his medical practice or close his office. The Defendants are also violating Mass. Gen. Laws, chapter 93A, §§ 2 and 11 by knowingly and intentionally engaging in unfair and deceptive acts and practices. The Defendants' actions are also material breaches of the lease and the implied covenant of good faith and fair dealing. Dr. Gordon seeks preliminary and permanent injunctive relief in order to restrain the Defendants from continuing to violate his rights and those of his patients. In addition, he seeks an award of monetary and punitive damages, plus attorney's fees and expenses.

## The Parties

4.      The Plaintiff, Marcus Gordon, M.D. ("Dr. Gordon"), is a resident of Brookline, Norfolk County, Massachusetts.

5.      The Defendant 9 Branch Street, L.L.C. ("Branch LLC") is a limited liability company registered in the Commonwealth of Massachusetts. Branch LLC has a usual place of business in Methuen, Essex County, Massachusetts.

6.      The Defendant Brooks C-1 Control Corporation ("Brooks C-1") is a Nevada corporation with a usual place of business in Salem, New Hampshire. Brooks C-1 is the manager of Branch LLC.

2

7.      The Defendant Harold J. Brooks is the president and a director of Brooks C-1 and does business in Methuen, Massachusetts.

8.      The Defendant Joseph Friedman is an employee, officer, and/or agent of Branch LLC and Brooks C-1 and does business in Methuen, Massachusetts.

### Factual Allegations

9.      Dr. Gordon is a gynecological surgeon. He has had a medical office in Lynn, Massachusetts for the last eight years. He provides a full range of gynecological services and surgery, including hysterectomies, laparoscopies, and pregnancy terminations, all of which are standard components of a gynecological surgery practice.

10.     In 2003, Dr. Gordon decided to open a second office, in the Lawrence, Massachusetts area, where he saw a growing need for his services. In 2004, David Morin, who was the property manager for the Defendant Branch LLC, showed Dr. Gordon some office space at 9 Branch Street in Methuen, Massachusetts (the "Premises"). Dr. Gordon explained that he was a gynecological surgeon and that he would need to have the Premises modified so that he could use it to perform out-patient surgical procedures. Dr. Gordon also explained to Mr. Morin that he would need full access to the property, as he planned to have evening and weekend office hours. Mr. Morin assured Dr. Gordon that this would not be a problem and that Dr. Gordon and his staff would be given alarm codes for the building.

11.     Dr. Gordon and Mr. Morin negotiated the terms of a lease for the Premises. In August 2004, Dr. Gordon signed a written lease (the "Lease") with the Defendant Branch LLC for the Premises. Mr. Morin signed the Lease on behalf of Branch LLC.

12.     Under the terms of the Lease, Dr. Gordon was to occupy the Premises for an initial term of five years, with options to extend the lease term for four additional periods of five years each, giving Dr. Gordon an interest in the property until the year 2029. Article 1.7 of the

3

lease defined the permitted use as "Office/Medical." By its terms, the Lease required Branch LLC, as the landlord, to build out the space and to provide access at all times.

13.    After the Lease was executed, Dr. Gordon planned the "build-out" of the Premises with Mr. Morin, and Branch LLC began construction.

14.    When the construction was nearing completion, Dr. Gordon informed Mr. Morin that he would need security glass for the reception area for privacy and security needs, and Mr. Morin agreed to install such glass. However, the glass that was installed was the wrong type of glass and was installed in office space that was not part of the Premises. Dr. Gordon then proposed that he make his own arrangements to install the proper glass, and Mr. Morin agreed. Dr. Gordon then had security glass installed, at his own expense.

15.    By the terms of the Lease, the anticipated commencement date was October 1, 2004. Dr. Gordon occupied the Premises later that month and began doing business as "Merrimack Valley Women's Health Services."

16.    At no time did Dr. Gordon misrepresent to any of the Defendants or their agents the nature of his practice. Dr. Gordon has never hidden the nature of his practice, and he maintains a listing for his practice in the Yellow Pages under "Abortion." Abortion-related services are an accepted component of a gynecological surgery practice. The Defendants never asked whether Dr. Gordon provided abortion-related services to his patients, and the Defendants certainly had no reasonable basis for assuming that he did not.

17.    Until recently, the Defendants had not complained to Dr. Gordon about the nature of his practice or the way in which he conducted it.

18.    On or about April 28, 2005, approximately twenty anti-abortion protestors gathered in the driveway leading to the Premises in order to picket Dr. Gordon's practice. The

4

protest was peaceful. The police were called, and they moved the protesters to the public sidewalk, which is a significant distance from the Premises. The protestors remained there without incident.

19.     On April 29, 2005, a Lawrence newspaper, The Eagle-Tribune, ran a story about the protest, entitled "Property Owner Looks to Escape Lease with Women's Health Clinic." The story quoted the Defendant Friedman as stating that "we did not know he [Dr. Gordon] would be doing abortions – we would not have rented it [the Premises] to him had we known." The story further quoted Friedman as stating that "[t]he owner of the company [the defendant Brooks] is not happy with that procedure going on in his building."

20.     On May 8, 2005, The Eagle-Tribune ran another story about Dr. Gordon's practice, reporting that, according to Defendant Friedman, defendant Brooks Corp., the owner of the Premises, "continues to search for ways out of its lease with Gordon" based in part on the personal opposition of defendant Harold J. Brooks to abortion.

21.     After the newspaper articles were published, Dr. Gordon spoke with Defendant Friedman by telephone. Friedman said that the company had consulted with its attorneys and had decided that Dr. Gordon was in violation of his Lease and he would have thirty to forty days to vacate the premises.

22.     Dr. Gordon then received a letter dated May 12, 2005 from Paul R. Kfoury, Sr., an attorney for 9 Branch Street, LLC. A true copy of the letter is attached hereto as Exhibit A. The May 12 letter alleged that Dr. Gordon was in violation of numerous terms of the Lease.

23.     The May 12 letter also claimed that Dr. Gordon made intentional misrepresentations during the negotiation of the Lease by failing to disclose that he would be performing abortions on the Premises.

5

24.     The May 12 letter asserted that the performance of abortions constituted an impermissible and extra-hazardous use of the Premises and demanded that Dr. Gordon "cease and desist the offering or providing of any abortion or abortion-related services on or about or from the Leased Premises."

25.     The May 12 letter also claimed that Dr. Gordon had committed numerous breaches of the "Landlord's rules and regulations." However, the Defendants have never furnished Dr. Gordon with any rules or regulations and have not identified what specific rules or regulations Dr. Gordon is claimed to be in violation of.

26.     Dr. Gordon, through his counsel, responded to the May 12 letter with a letter dated May 25, 2005. A true copy of the letter is attached hereto as Exhibit B. In that May 25 letter, counsel for Dr. Gordon denied that Dr. Gordon was in violation of the Lease, informed Mr. Kfoury that the factual allegations were false, and demanded that the Defendants stop violating Dr. Gordon's civil rights.

27.     Mr. Kfoury replied to the May 25 2005 letter with a letter dated June 1, 2005. A true copy of the letter is attached hereto as Exhibit C. In his June 1 letter, Mr. Kfoury continued to assert that Dr. Gordon was in violation of the lease and that he had committed fraud. Mr. Kfoury further stated that "I shall respond to both letters [the May 25 letter and another letter from Dr. Gordon's counsel] at a time and in a manner of our choosing."

28.     While accusing Dr. Gordon of violating the terms of the lease, the Defendants themselves have failed to provide him with agreed-upon twenty-four hour/seven day access to the building, as provided by Article 1.20 of the Lease.

29.     If the Defendants take the threatened action to terminate the lease and evict the Plaintiff, he and his patients will suffer irreparable harm, including the deprivation of his

6

patients' constitutionally protected right to receive abortion-related services without interference or delay. Dr. Gordon has no adequate remedy at law.

### Count One
### (Declaratory Judgment, Mass. Gen. Laws. c. 231A)

30.     The Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 29 as if set forth fully herein.

31.     There is an actual and justiciable controversy between the parties, within the meaning of Mass. Gen. Laws, chapter 231A, regarding the Plaintiff's rights under the Lease.

32.     Dr. Gordon is entitled to a declaration that, *inter alia*, he has a right under the Lease to provide abortion-related services to his patients, that he has a right to be free from interference and harassment by the Defendants, and that he is not in material breach of any provisions of the Lease.

### Count Two
### (Mass. Gen. Laws. c. 12, § 11H and § 11I - Massachusetts Civil Rights Act)

33.     The Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 29 as if set forth fully herein.

34.     The Defendants are interfering or attempting to interfere, by threats, intimidation or coercion, with the secured rights of Dr. Gordon and his patients to provide or receive abortion services, in violation of Mass. Gen. Laws, chapter 12, §11H and §11I.

### Count Three
### (Mass. Gen. Laws, Chapter 93A - Consumer Protection Act)

35.     The Plaintiff repeats and realleges the allegation contained in paragraphs 1 through 29 as if set forth fully herein.

36.     At all relevant times, Defendants were engaged in the conduct of trade or commerce within the meaning of Mass. Gen. Laws, chapter 93A.

7

37.    By their conduct and that of their agents, the Defendants have engaged and are engaging in unfair and deceptive act and practices in willful and knowing violation of Mass. Gen. Laws, chapter 93A, as a result of which the Plaintiff is suffering and will suffer a loss of money and property.

38.    Defendants' violations of Mass. Gen. Laws, chapter 93A, have occurred primarily and substantially within the Commonwealth of Massachusetts.

## Count Four
### (Breach of Contract)

39.    The Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 29 as if set forth fully herein.

40.    By their conduct, the Defendants have committed and are committing material breaches of the Lease, including but not limited to:

> a)    interference with the Plaintiff's right to quiet enjoyment under Article 27 of the Lease;
>
> b)    the failure to provide access to the Premises at all times under Article 1.20 of the Lease;
>
> c)    the assertion of false claims that the Plaintiff is in breach of the lease;
>
> d)    the assertion that the Plaintiff has failed to pay amounts that are due under the Lease.

41.    The Defendants' ongoing material breaches of the Lease have caused and are causing the Plaintiff to suffer substantial harm.

## Count Five
### (Breach of the Covenant of Good Faith)

8

42.     The Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 29 as if set forth fully herein.

43.     By their conduct, the Defendants have breached and are breaching the implied covenant of good faith and fair dealing, and thereby have caused and are causing the Plaintiff to suffer substantial harm.

<u>Count Six</u>
(Interference with Contractual Relations)

44.     The Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 29 as if set forth fully herein.

45.     The Plaintiff has legally protected contractual relations with his patients.

46.     By their conduct, the Defendants have interfered and are interfering with those contractual relations, and are interfering with the rights of Dr. Gordon's patients, under both the United States Constitution and the Massachusetts Constitution, to receive appropriate medical care, including the right to receive abortion-related services, and thereby have caused and are causing the Plaintiff and his patients to suffer substantial harm.

<u>Relief Requested</u>

WHEREFORE, the Plaintiff, Marcus Gordon, M.D., requests that the Court grant the following relief:

1.     Issue a temporary restraining order prohibiting the Defendants from terminating or otherwise interfering with the Plaintiff's lease or attempting to evict him from the Premises;

2.     Upon notice and after hearing, issue a preliminary injunction prohibiting the Defendants from terminating or otherwise interfering with the Plaintiff's lease or attempting to evict him from the Premises;

3.     Enter a judgment against the Defendants:

9

a)      Permanently enjoining the Defendants from terminating or
otherwise interfering with the Plaintiff's lease or attempting to evict him
from the Premises;

b)      Declaring that the performance of abortions is a permitted use of
the leased premises under the Lease provisions and that Defendants'
threats to terminate the lease because of the performance of abortions
constitutes a breach of the lease by the Defendants and interference with
Dr. Gordon's secured rights protected under the Massachusetts Civil
Rights Act;

c)      Awarding the Plaintiff compensatory and punitive damages; and

d)      Awarding the Plaintiff his attorney's fees, costs and expenses;

4.      Grant such further relief, legal and equitable, as may be just and proper.

                        MARCUS GORDON, M.D.
                        By his attorneys,

                        _Alau Fryer by sw_

                        R. Alan Fryer (BBO# 180830)
                        Dorothy M. Bickford (BBO #566380)
                        BADGER DOLAN PARKER & COHEN
                        One State Street
                        Boston, MA 02109
                        (617) 482-3030

                        _Sarah W unsch_

                        Sarah R. Wunsch (BBO# 548767)
                        ACLU of Massachusetts
                        99 Chauncy St., Suite 310
                        Boston, MA 02111
                        617-482-3170, ext. 323

Dated: June 10, 2005

10



# WIGGIN & NOURIE, P.A.
### Counsellors at Law

Paul R. Kfoury, Sr.
pkfoury@Wiggin-Nourie.com
603-629-4525

May 12, 2005

J. WALKER WIGGIN (1901-1995)
PAUL E. NOURIE (1908-1978)
T. WILLIAM BIGELOW (RETIRED)
DORT S. BIGG (RETIRED)
—————
WILLIAM S. ORCUTT†
W. WRIGHT DANENBARGER
L. JONATHAN ROSS
JOHN R. MONSON†
PAUL R. KFOURY, SR.†
GREGORY E. MICHAEL†
BENJAMIN F. GAYMAN
GORDON A. REHNBORG, JR.
RICHARD B. McNAMARA†
GREGORY A. HOLMES†
STEPHEN J. PATTERSON
KATHRYN S. WILLIAMS*†
THOMAS J. PAPPAS
PETER E. HUTCHINS
DENNIS T. DUCHARME
GARY M. BURT*
DOREEN F. CONNOR*
STEPHANIE A. BRAY†
SHARI M. JANKOWSKI
EN M. JOSEPH
.I P. MYSKOWSKI†
DARLA S. SEDGWICK
DENIS O. ROBINSON
JAMES V. FERRO, JR.†
DANIEL DUCKETT†
CHRISTOPHER J. PYLES†
SHELIAH M. KAUFOLD
ELIZABETH M. LEONARD*
GAIL E. BAKIS
ASHLYN J. LEMBREE†
MEREDITH P. COOK
RALPH SUOZZO
ERIK T. BARSTOW†
MARY ANN DEMPSEY†
HEATHER E. KRANS†
CAROL L. KUNZ
WILLIAM J. EDWARDS†
DONNA-MARIE COTE
POLLY L. HALL
ROBERT J. CONSAVAGE
LOUIS D. DEMATO†
STEPHAN P. PARKS
PATRICIA M. PANCIOCCO
MEGAN J. BEAUREGARD

* Also Admitted in Maine
† Also Admitted in Massachusetts
* Also Admitted in Connecticut
† Also Admitted in Rhode Island

## CERTIFIED MAIL/RETURN RECEIPT REQUESTED

Marcus T. Gordon, M.D.
Merrimack Valley Women's Health Services
9 Branch Street, Unit #302
Methuen, Massachusetts 01844

RE:    **9 Branch Street, LLC**
vs.    **Marcus Gordon, M.D.**

Dear Dr. Gordon:

This is to advise you that this firm serves as counsel to 9 Branch Street, LLC (hereinafter "Landlord") in respect to a certain August 11, 2004 Lease Agreement (hereinafter "Lease") by and between it and Marcus Gordon, M.D. (hereinafter "Tenant").

Contrary to the representations you made during the negotiation of the Lease terms and the Landlord's reliance on those representations, it has come to the Landlord's attention that you are utilizing the Leased Premises in a manner not permitted under the terms of the Lease. Moreover, your intentional omission and failure to disclose, at the time the Lease was negotiated, the actual use you intended to make of the Leased Premises and the reasonably foreseeable consequences of such use, constituted a material breach of the mutual covenants made between you and the Landlord upon entering into the Lease.

It has recently become clear to the Landlord that rather than utilizing the Leased Premises as a physician's office, the use you disclosed to the Landlord in negotiating the Lease, your intended and actual use of the Leased Premises has been principally, if not exclusively, to use the premises as an

Marcus T. Gordon, M.D.
May 12, 2005
Page 2

abortion clinic. Notwithstanding the Landlord's reservation of its right to terminate the
Lease on the basis that your material omissions regarding the intended and actual use of
the Leased Premises, the Landlord is prepared to afford you an opportunity to cure your
many present violations of the Lease. Pursuant to the authority reserved to the Landlord
under Article 4 of the Lease, you are hereby notified that the manner in which you are
presently utilizing the Leased Premises constitutes an impermissible use of that premises.
Accordingly, you are immediately directed to <u>cease and desist</u> the offering or providing
of any abortion or abortion-related services on or about or from the Leased Premises.

In addition to violating the Landlord's rules and regulations regarding permitted
uses of the Leased Premises, providing abortion services from the premises constitutes an
"extra hazardous" use prohibited by Article 7.8 of the Lease. Your decision to replace
glass installed by the Landlord in preparation for your occupancy of the Leased Premises,
with bulletproof glass establishes that your intended and actual use of the premises
constitutes an "extra hazardous" use. Further, your failure to disclose the need for
bulletproof glass or to request that the Landlord install such glass prior to your taking
occupancy supports the Landlord's contention that you intentionally omitted from
negotiations your intended use of the Leased Premises. Your decision to install
bulletproof glass without the prior written consent of the Landlord constitutes a breach of
Article 17 of the Lease. Accordingly, you are hereby directed to immediately have the
bulletproof glass removed from the Leased Premises and to have the original glass
provided by the Landlord reinstalled.

While the Landlord is not unsympathetic that the delivery of abortion services
themselves may not be "extra hazardous," the Landlord has obligations to its other
tenants and those who frequent the building in which the Leased Premises is located.
While the recent protest in proximity to the Leased Premises was peaceful, the reality is
that the emotional reaction from some segments of the public have to the rendering of
abortion services can lead to violence. Considering the risk associated with the rendering
of such services, before agreeing to lease space to such a medical provider, any landlord
would need to consider a number of factors, including but not limited to: the nature of
other tenants in the building; the ability to protect those tenants from the risks associated
with the delivery of abortion services; and whether the physical characteristics of the
premises themselves are conducive to the safe operation of such a facility. Your
intentional failure to disclose the intended use of the Lease Premises precluded the
Landlord from making that critical assessment prior to entering into the Lease.

Marcus T. Gordon, M.D.
May 12, 2005
Page 3

      Notwithstanding your failure to disclose the intended use of the Leased Premises, the manner in which you have operated your facility constitutes a material breach of the Lease. While you have represented that you have secured appropriate medical waste disposal services, your decision to place bloody medical waste into the building refuse container, constituted a breach of Article 12 of the Lease. Disposing of such waste in that manner not only put the Landlord's employees and other tenants at risk but it may subject the Landlord to government sanctions or place the Landlord in breach of its agreement with its waste removal contractor. To the extent the Landlord is presently willing not to terminate the Lease based upon your violation of Article 12, you are advised that any future medical waste found in a common trash receptacle will result in the Landlord moving to immediately terminate the Lease.

      In the event the Landlord is required to seek judicial intervention in terminating this Lease, the Landlord expressly reserves the right and intends to establish that your violations of the Lease terms may not be limited to those set forth hereinbefore. Such violations of the Lease include the following:

      Article 4, Use. "The Tenant shall use the Leased Premises only for the Permitted Use. The use of the Leased Premises by Tenant, however, is expressly subject to all applicable zoning ordinances and rules and regulations of any governmental authority, instrumentality, board or bureau having jurisdiction over the Leased Premises, and the rules and regulations adopted by Landlord for the Property from time to time."

      Article 7.8, Increase in Insurance. "The Tenant shall not use or occupy the Leased Premises or any part thereof or suffer or permit the same to be used or occupied for any business or purpose deemed extra hazardous on account of fire or otherwise..."

      Article 11.2, Repairs. "Tenant will procure all necessary permits before making any repairs, installations, alterations, additions, improvements or removals. Landlord will cooperate with tenant in obtaining such permits. Tenant will make all repairs, installations, alterations, improvements and removals in a good and workmanlike

Marcus T. Gordon, M.D.
May 12, 2005
Page 4

manner, in conformity with all laws, ordinances and regulations of
all public authorities and all insurance inspections or rating
bureaus having jurisdiction, and so that the structure of the
Building will not be endangered or impaired…

Article 12, Requirements of Public Authorities. "Tenant shall
suffer no waste or injury in or about the Leased Premises and
shall comply with all federal, state, county and municipal laws,
ordinances and regulations applicable to the structure, use and
occupancy of the Leased Premises…"

Article 17, Alterations. "Except for that work specifically shown
on Exhibit C attached hereto and incorporated herein as Tenant's
Work, Tenant covenants and agrees that it will not make any
improvements, changes, installations, renovations, additions or
alterations in and about the Leased Premises in excess of any
aggregate cost of $2500.00 without the prior written consent of
Landlord which consent shall not be unreasonably delayed or
withheld. Tenant covenants and agrees that it will not make any
structural improvements, changes, installations, renovations,
additions or alterations in and about the Leased Premises of
any kind whatsoever, without first obtaining the prior written consent
of Landlord."

Article 26.1(e), Default By Tenant. "…if Tenant shall fail to perform
or observe any requirement, obligation, agreement, covenant or condi-
tion of this Lease…and the failure shall continue for thirty (30) days
after Landlord gives Tenant notice thereof…"

Article 26.1(f), Default By Tenant. "If any representations or warranty
contained in this Lease shall prove to be incorrect in any material
respect on the date upon which it was made, then at any time following
any of such events of default, Landlord, without waiving any other
rights herein available to Landlord at law or in equity, may either
(1) give Tenant written notice of termination of this Lease, or (2)
without terminating this Lease, give Tenant written notice of Land-
lord's intention to reenter and take possession of the Leased Premises,
with legal process."

Marcus T. Gordon, M.D.
May 12, 2005
Page 5

> Article 26.4, Default By Tenant: "No remedy herein conferred upon or
> reserved to Landlord is intended to be exclusive of any other remedy
> herein or by law provided, but each shall be cumulative and shall be
> in addition to every other remedy given hereunder or now or hereafter
> existing at law or in equity or by statute..."

> Article 36, Hazardous Materials. "...the Hazardous Materials
> Transportation Act, as amended, 42 U.S.C. § 9601, et. seq....

> "...any spilling, leaking, pumping, pouring, emitting, emptying,
> discharging, injecting, escaping, leaching, dumping or
> disposing into the environment..."

On November 15, 2004 you were notified of the cost for the installation of the
non-electric sign and billed for the same in the sum of $925.57. On January 1, 2005 a
rent charge of $.18 was imposed, and on March 4, 2005 a CAM reconciliation statement
was sent to you reflecting a balance due of $2,190.66, for a total sum due and owing of
$3,116.41, which remains outstanding, in violation of Article 26 of the Lease and for
which payment is demanded immediately.

You are requested to notify the undersigned in writing no later than the close of
business on May 20, 2005 of your intention to comply with each and every of the
requirements set forth in this letter. In the event that you fail to provide such notice, the
Landlord intends, pursuant to Article 26 of the Lease, to declare the lease in default, and
to seek any and all remedies available under the terms of the Lease and the law.

Very truly yours,

Paul R. Kfoury, Sr.

PRK/cjg
00623702.DOC
Enclosure
CC:    Joseph Friedman, President

# BADGER, DOLAN, PARKER & COHEN

ATTORNEYS AT LAW
ONE STATE STREET
BOSTON, MASSACHUSETTS 02109

George F. Parker, III
James B. Dolan
Lawrence J. Cohen

Irina V. Gott
Amy L. Witts

TELEPHONE (617) 482-3030
FACSIMILE (617) 482-6919
e-mail: badger@badgerlaw.com

May 25, 2005

*Of Counsel*

Dorothy M. Bickford*
Philip W. Riley
John D. Hackett
R. Alan Fryer
*also admitted in New Hampshire

Paul R. Kfoury, Sr., Esq.
Wiggin & Nourie, P.A.
670 North Commercial Street, Suite 305
P. O. Box 808
Manchester, NH 03105-0808

> Re:    9 Branch Street, LLC
>        Marcus Gordon, M. D.

Dear Paul:

As you know, this office and the American Civil Liberties Union of Massachusetts jointly represent Marcus Gordon, M.D. in connection with the issues raised in your letter of May 12, 2005.

Contrary to the representations in your letter, Dr. Gordon has not engaged in any conduct that violates the terms of his August 11, 2004 lease (the "Lease") with your client, 9 Branch Street, LLC ("Landlord"). Furthermore, the unfounded allegations in your letter are a pretext for terminating the Lease in order to prevent Dr. Gordon from exercising his legal right to engage in a perfectly legitimate medical practice as a gynecological surgeon.

Each of the arguments set forth in your letter is demonstrably without any factual basis or legal merit. I will address them in the order that you raise them.

1.     **Dr. Gordon is not violating the Lease by engaging in his medical practice.**
Article 1.7 of the Lease clearly specifies the type of use that is permissible at the leased premises: "Permitted Use: Office/Medical." Dr. Gordon is a gynecological surgeon, and he is engaged in a medical practice that performs outpatient gynecological surgery and provides other gynecological services, which obviously qualifies as an "office/medical" use and which is permitted under the Lease. Furthermore, an outpatient gynecological surgery practice typically performs a number of surgical procedures, including hysterectomies, laparoscopies, and pregnancy terminations. Nothing in the Lease restricts the type of medical practice that Dr. Gordon may engage in. Therefore, it is not a violation of the Lease for Dr. Gordon to provide

BADGER, DOLAN, PARKER & COHEN
Paul R. Kfoury, Sr., Esquire
May 25, 2005
Page 2

medical services of any kind, and it is certainly not a violation for him to perform outpatient gynecological surgery, which includes abortions.

Nor did Dr. Gordon misrepresent the nature of his practice during the lease negotiations. Those negotiations were conducted with the Landlord's representative, David Moran. He was well aware that Dr. Gordon intended to operate an outpatient gynecological surgery practice, and abortion-related services are frequently a part of such a practice. Dr. Gordon also told Mr. Moran that security glass should be installed, and another of the Landlord's employees, Steve Amanantian, said to Dr. Gordon, "I know what you need – like the pharmacy downstairs. I'll take care of it." Mr. Amanantian also said, "Well, of course, with what you guys are doing here, you obviously need this kind of glass." Thus, statements made by the Landlord's own employee demonstrate full knowledge of the nature of Dr. Gordon's practice.

Furthermore, Dr. Gordon never told any representative of the Landlord that he would not be providing abortion-related services as a part of his medical practice. In addition, Dr. Gordon has always been open about the nature of his practice and even advertises in the phone book under "Abortion." Thus, Dr. Gordon has in no way misrepresented his practice to any representative of the Landlord, and the Landlord had no basis whatsoever for assuming that Dr. Gordon would not be performing all of the surgical procedures typically associated with an outpatient gynecological surgery practice.

2.    **Dr. Gordon's medical practice is not an "extra hazardous" use.**  Article 7.8 of the Lease relates to activities "deemed" extra hazardous by virtue of causing an increase in the premiums for fire insurance on the leased premises. There is nothing "extra hazardous" about an outpatient gynecological surgery practice. Nor is the installation of security glass any evidence that Dr. Gordon's medical practice constitutes a fire hazard. You even concede in your letter that Dr. Gordon's activities, in and of themselves, are not "extra hazardous."

Furthermore, as you have also admitted, the one and only protest that has taken place to date was peaceful. In addition, the physical location of the building in the midst of a privately-owned office complex insures that no demonstrations will take place in close proximity to the leased premises. The mere possibility that unidentified third persons over whom Dr. Gordon has no control may engage in illegal activities at some point in the future does not convert a perfectly legitimate and peaceful medical practice into an extra hazardous activity within the meaning of Article 7.8.

3.    **Dr. Gordon did not breach Article 17 of the Lease.**  Dr. Gordon has not made any changes or alterations to the leased premises in violation of Article 17. As noted above, the installation of security glass was performed as part of the initial build-out of the space, and it was done with the authorization of, and at the direction of, Mr. Moran as agent for the Landlord. However, the contractor hired by the Landlord installed the wrong type of glass in an office suite that was not part of the leased premises. It was only after the Landlord and its contractor had performed the work incorrectly that Dr. Gordon offered to arrange for the work to be done, and he did so at his own expense, with the express permission of Mr. Moran.

BADGER, DOLAN, PARKER & COHEN
Paul R. Kfoury, Sr., Esquire
May 25, 2005
Page 3

4.    **Dr. Gordon is not in violation of Article 12 because he has complied with all requirements of public authorities.** Although you have asserted that Dr. Gordon has violated Article 12 of the Lease, you have not cited a single violation by Dr. Gordon of any specific ordinance or regulation of any federal, state or local authority. Furthermore, the disposal of medical waste is strictly regulated by Massachusetts authorities, and Dr. Gordon is in full compliance with the applicable requirements. At his own expense, Dr. Gordon uses the services of a medical waste disposal company for blood-stained waste, and he disposes of all products of conception in sealed containers, with the waste being incinerated at a hospital facility.

Nor has Dr. Gordon put any of the Landlord's employees or tenants at risk. There are some types of medical waste that may be disposed of in the regular trash, even if they have a small amount of blood on them. Therefore, the Landlord's purported concerns about government sanctions that have not been threatened and a possible breach of its agreement with its waste removal contractor are totally unfounded.

5.    **Dr. Gordon is not violating any of the Landlord's rules or regulations.** In your letter, you make a passing reference to violations by Dr. Gordon of the Landlord's rules and regulations. However, you have not identified any such rules or regulations, and the Landlord has never notified Dr. Gordon of any rules or regulations promulgated under Article 4 of the Lease. Moreover, any rules or regulations that the Landlord might now adopt and enforce against Dr. Gordon in an attempt to restrict the constitutionally protected surgical procedures that are a part of Dr. Gordon's practice would not be valid and would constitute a breach by the Landlord of the Lease.

6.    **Your assertion that Dr. Gordon has violated Article 26 by failing to pay certain expenses is without merit.** Your assertions that Dr. Gordon is obligated to pay certain expenses and that his failure to do so is a violation of Article 26 are similarly unfounded. Specifically, there is no basis to charge Dr. Gordon for the installation of a sign. During the build-out of the office space, Mr. Moran asked Dr. Gordon if he would like to have a sign on the outside wall of the office. Mr. Amanantian then volunteered that he had some left-over lettering that he could use. He proceeded to install a "sign" consisting of letters (some of which were damaged) that spelled out the name of Dr. Gordon's practice. Neither Mr. Moran nor Mr. Amanantian stated or suggested that there would be any charge, and Dr. Gordon never agreed to make any payment for the sign. The Landlord has no right to charge Dr. Gordon after the fact for services that it volunteered in advance to provide.

Similarly, the Landlord's claim that Dr. Gordon owes $2,190.66 has never been documented. Dr. Gordon has never received the "CAM reconciliation statement" that you refer to and has no idea what this charge is for. If the Landlord provides documentation to substantiate this charge, he will review it. He is prepared to pay his share of any amounts that are legitimately due and payable under the terms of the Lease.

Finally, the assertion that Dr. Gordon is in breach of the Lease because he has not paid a rent charge in the amount of $.18 assessed by the Landlord in January is petty on its face and

BADGER, DOLAN, PARKER & COHEN
Paul R. Kfoury, Sr., Esquire
May 25, 2005
Page 4

demonstrates as clearly as possible that the Landlord is using purported violations of the Lease as a pretext to pressure Dr. Gordon into abandoning his practice.

Furthermore, your assertion that the Landlord is "not unsympathetic" to Dr. Gordon's surgical practice is flatly contradicted by statements that the Landlord's president, Joe Friedman, has made to the press. He is quoted as stating that the Landlord would not have entered into the Lease if it had known that Dr. Gordon performs abortions. Mr. Friedman is further reported to have said that the Landlord's owner, Harold Brooks, is personally opposed to abortions and that the Landlord was searching for a way out of the Lease.

7.    **Dr. Gordon has not violated any other provision of the Lease.** You have also asserted, without explanation, that Dr. Gordon has violated Articles 11.2, 26.1(e), 26.1(f), 26.4 and 36 of the Lease. With respect to each of those articles, Dr. Gordon responds as follows:

- Article 11.2 – to the extent that your allegation is based upon the installation of the security glass, Dr. Gordon has not violated that provision, for the reasons set forth above;

- Article 26.1(e) – Dr. Gordon has not failed to perform or observe any requirement of the Lease;

- Article 26.1(f) – Dr. Gordon has not made any representation or warranty in the Lease that was "incorrect in any material respect on the date upon which it was made";

- Article 26.4 – Dr. Gordon is not in default of the Lease, so this article has no application;

- Article 36 – to the extent that your allegation is based upon the disposal of medical waste, Dr. Gordon has not violated that provision, for the reasons set forth above, and he has not otherwise violated the Hazardous Materials Transportation Act.

8.    **Dr. Gordon has not interfered with the Health Inspector.** You have reported that Dr. Gordon recently failed to permit an inspection of the leased premises by the Methuen Board of Health. However, as I explained on the telephone, that is not the case. The health inspector appeared at Dr. Gordon's office once, voluntarily decided not to conduct an inspection at that time, and requested that Dr. Gordon contact him. Dr. Gordon has done so, and he has no objection to an inspection being conducted by the Board of Health at any time, so long as patient privacy is protected.

9.    **The Landlord is breaching the Lease.** The Landlord is itself in violation of specific provisions of the Lease. When the Lease was being negotiated, Dr. Gordon stated that he needed to have access to the leased premises 24 hours per day, seven days per week, and Mr. Moran assured him that he would have such access. This assurance was incorporated into Article 1.20 of the Lease. Nevertheless, Dr. Gordon has not had the access necessary for him to be able to operate his practice without setting off the alarm system. Dr. Gordon sees patients in the evening, and they sometimes leave the office after 8:00 p.m., when the security system alarm

BADGER, DOLAN, PARKER & COHEN
Paul R. Kfoury, Sr., Esquire
May 25, 2005
Page 5

is automatically activated. As a result, any patient leaving after 8:00 p.m. will set off the alarm by opening the door to leave the building. Dr. Gordon has asked to have the alarm system reset so that it will activate later in the evening, but the Landlord has refused.

As a result, Dr. Gordon is not responsible for any alarms that are triggered by his use of the premises in accordance with his rights under the Lease, and he will not pay any charges assessed by the Methuen Police Department or by Brooks Maintenance for responding to such alarms. The Landlord is in violation of the Lease both by failing to provide the required access and by attempting to assess against Dr. Gordon the assessed charges.

Moreover, by demanding that Dr. Gordon cease and desist from the normal surgical procedures for which he leased the premises, the Landlord has breached Article 27 of the Lease.

10. **The Landlord is violating Dr. Gordon's civil rights.** The Landlord's conduct also violates the Massachusetts Civil Rights Act, Mass. Gen. Laws c. 12 § 11H and § 11I, which prohibits any interference with Dr. Gordon's exercise of his constitutional rights by threats, intimidation or coercion. The Landlord is attempting to intimidate and coerce Dr. Gordon into abandoning his Lease or restrict his practice by making unfounded allegations that he is in violation of the Lease and threatening to declare him in default.

Moreover, to the extent that the Landlord is attempting to terminate the Lease or to restrict the nature of Dr. Gordon's surgical practice because it perceives a threat of violence or coercion by any third parties, such as anti-abortion protesters, this is itself a violation of the Massachusetts Civil Rights Act. Redgrave v. Boston Symphony Orchestra, Inc. 399 Mass. 93, 100 (1987). Nor is fear of business disruption, fear of economic loss, or even fear for physical safety a defense to liability. Id. at 101. The Landlord should be aware that Dr. Gordon will be entitled to recover an award of legal fees and costs incurred in any legal proceedings required to protect Dr. Gordon from any conduct of the Landlord that violates the Massachusetts Civil Rights Act.

Dr. Gordon did not seek this confrontation and has no desire to engender animosity. He seeks only to provide medical services to his patients without further interference or harassment. However, the medical services that Dr. Gordon provides at the leased premises are protected by the United States Constitution, the Massachusetts Constitution, and the Massachusetts Civil Rights Act, and Dr. Gordon will not hesitate to seek injunctive relief and compensatory damages if the Landlord makes any further attempts to interfere with his practice. Neither the Landlord nor others opposed to the nature of Dr. Gordon's practice have any right to impose their political views upon Dr. Gordon or his patients, and he is prepared to take all steps necessary to prevent any further attempts by the Landlord to do so under the pretext of alleged leasehold violations.

In the light of the statements made by the Landlord's representatives in the press and the threats against Dr. Gordon's tenancy contained in your May 12 letter, we must receive written confirmation that the Landlord has withdrawn the demands contained in your letter and will stop any and all efforts to interfere with Dr. Gordon's rights under the Lease and under the

BADGER, DOLAN, PARKER & COHEN
Paul R. Kfoury, Sr., Esquire
May 25, 2005
Page 6

constitution to provide the full range of outpatient gynecological services to his patients. We do not believe it is in the interests of either party to have to litigate these matters, and I hope to hear from you as soon as possible, but in any event no later than Monday, June 6, 2005.

Very truly yours,

Dorothy M. Bickford

DMB:kkt
cc:    Marcus Gordon, M.D.
       Sarah Wunsch, Esquire
90631



WIGGIN & NOURIE, P.A.
Counsellors at Law

Paul R. Kfoury, Sr.
pkfoury@Wiggin-Nourie.com
603-629-4525

June 1, 2005

J. WALKER WIGGIN (1901-1995)
PAUL E. NOURIE (1908-1978)
T. WILLIAM BIGELOW (RETIRED)
DORT S. BIGG (RETIRED)

WILLIAM S. ORCUTT¹
W. WRIGHT DANENBARGER
L. JONATHAN ROSS
JOHN R. MONSON¹
PAUL R. KFOURY, SR.¹
GREGORY E. MICHAEL¹
BENJAMIN F. GAYMAN
GORDON A. REHNBORG, JR.
RICHARD B. MCNAMARA¹
GREGORY A. HOLMES¹
STEPHEN J. PATTERSON
KATHRYN S. WILLIAMS*†
THOMAS J. PAPPAS
PETER E. HUTCHINS
DENNIS T. DUCHARME
GARY M. BURT*
DOREEN F. CONNOR*
STEPHANIE A. BRAY¹
ELLEN M. JOSEPH
JAN P. MYSKOWSKI¹
DARLA S. SEDGWICK
DENIS O. ROBINSON
JAMES V. FERRO, JR.§
DANIEL DUCKETT¹
CHRISTOPHER J. PYLES¹
SHELIAH M. KAUFOLD
ELIZABETH M. LEONARD°
GAIL E. BAKIS
ASHLYN J. LEMBREE¹
MEREDITH P. COOK
RALPH SUOZZO
ERIK T. BARSTOW¹
MARY ANN DEMPSEY¹
HEATHER E. KRANS¹
CAROL L. KUNZ
WILLIAM J. EDWARDS¹
DONNA-MARIE COTE
POLLY L. HALL
ROBERT J. CONSAVAGE
LOUIS D. DEMATO¹
STEPHAN P. PARKS
PATRICIA M. PANCIOCCO
MEGAN J. BEAUREGARD

* Also Admitted in Maine
† Also Admitted in Massachusetts
° Also Admitted in Connecticut
§ Also Admitted in Rhode Island

Dorothy M. Bickford, Esquire
Badger, Dolan, Parker & Cohen
One State Street
Boston, Massachusetts 02109

RE:    9 Branch Street, LLC
vs.    Marcus T. Gordon, M.D.

Dear Dorothy:

This will acknowledge your May 25, 2005 and May 26, 2005 letters in the above-entitled matter. I shall respond to both letters at a time and in a manner of our choosing.

In the meantime, the landlord's request remains extant that your client cease and desist in occupying the premises in an extrahazardous use fashion in the installation of bullet-proof glass, in your client's prior use in disposing of human tissue and medical waste in a common trash receptacle, and for all of the contractually-based violations set forth in our May 12, 2005 correspondence.

It is of great concern to the landlord that your client made intentional misrepresentations to it at the time this lease was being negotiated, that your client has perpetrated a fraud upon the landlord, and that your client has failed, refused and neglected to comply with the many terms and provisions of the lease including, but not limited to his failure, refusal and neglect to pay that which is due the landlord.

Very truly yours,

Paul R. Kfoury, Sr.

PRK/cjg
00630209.DOC
CC:    9 Branch Street, LLC